IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

JOE MADL AND MELISSA MADL,

      Appellants,

 v.                                                                      Case No. 5D16-53

WELLS FARGO BANK, N.A., AS
TRUSTEE UNDER THE POOLING AND
SERVICING AGREEMENT RELATING
TO IMPAC SECURED ASSETS CORP.,
MORTGAGE          PASS-THROUGH
CERTIFICATES, SERIES 2005-2, ET
AL.,

      Appellees.

_____/

Opinion filed December 29, 2017

Appeal from the Circuit Court
for Brevard County,
Lisa Davidson, Judge.

Beau Bowin, of Bowin Law Group, Satellite
Beach, for Appellants.

Adam Shamir, David S. Ehrlich, and Nicole
R. Topper, of Blank Rome LLP, Fort
Lauderdale, and Monika E. Siwiec, and
Manuel S. Hiraldo, of Blank Rome LLP,
Boca Raton, for Appellee, Wells Fargo
Bank, N.A., As Trustee Under the Pooling
and Servicing Agreement Relating to Impac
Secured Assets Corp, Mortgage Pass
Through Certificates, Series 2005-2.

Jacob A. Brainard, Scott C. Davis and Michael H. Casanover, of Business Law Group, P.A., Tampa, for Appellee, Suntree Master Homeowners Association, Inc.

No appearance for other Appellee.

EDWARDS, J.

Joe and Melissa Madl appeal the final judgment of foreclosure entered in favor of Appellee, Wells Fargo Bank, N.A., as Trustee under the Pooling and Servicing Agreement Relating to Impac Secured Assets Corp, Mortgage Pass-Through Certificates, Series 2005-2. Appellants correctly assert that Wells Fargo failed to prove that it had standing and that it gave Appellants the required notice of default. Accordingly, we reverse and remand for the trial court to enter an order of involuntary dismissal. We also grant Appellants' motion for appellate attorney's fees.

Melissa Madl executed a note and both Appellants executed a mortgage in 2005 in favor of Impac Funding Corporation. In 2006, Impac assigned the mortgage to Wells Fargo. Also in 2006, Wells Fargo filed a foreclosure action against Appellants on the subject note and mortgage, but it then voluntarily dismissed that case in 2007. Following that dismissal, Deutsche Bank National Trust filed a foreclosure action against Appellants regarding the same note and mortgage; that case was voluntarily dismissed in 2009.

Wells Fargo initiated the instant foreclosure action in April 2009, claiming in its complaint that it was the owner and holder of the note and that it had complied with all conditions precedent to foreclosing Appellants' mortgage.[1] The copy of the promissory

---

[1] Wells Fargo's complaint included a separate count to establish a lost note; however, that count was voluntarily dismissed prior to trial.

note attached to Wells Fargo's complaint was payable to Impac and there were no indorsements or alloneges attached. The trial court denied Appellants' motion to dismiss the complaint based on a lack of standing. In their answer, Appellants raised lack of standing and the failure to comply with the notice provisions of paragraph 22 of the mortgage, along with other defenses.

In an effort to establish standing, Wells Fargo moved into evidence the purported original promissory note that contained an undated blank indorsement allegedly signed by Impac.[2] Wells Fargo's witness, Mr. Handville, an employee of Ocwen Loan Servicing, testified that he did not know when the indorsement was made, and he agreed that the copy of the promissory note attached to the complaint lacked any indorsement. Wells Fargo also introduced into evidence, over objection, an unsigned copy of a pooling and servicing agreement ("PSA") in an effort to prove that Appellants' loan was included in the trust it oversaw. The PSA had no official seal, was not separately authenticated, and had merely been copied from the Security and Exchange Commission's website.

Mr. Handville also testified about whether proper notification of default and acceleration had been given to Appellants. He said that Ocwen was the current servicer of the mortgage but that GMAC Mortgage had been the servicer at the time the required default notice should have been sent. According to Mr. Handville, from what he had been told, GMAC typically sent relevant information to a third-party vendor who was supposed

---

[2] During the trial, Appellants challenged whether the "original" note and indorsement were genuine, including through expert testimony from a questioned documents expert. Mr. Handville had not seen the original note until the day of trial and could not tell if it included an original signature or was a copy created using a color ink jet printer. However, that issue was not fully developed here, and its resolution is not necessary for this decision.

to prepare and mail the default letters. He could not testify that GMAC actually transmitted the default notice data to the third-party vendor, that the third-party vendor received the data, or that the third-party vendor actually prepared or mailed the default notice to Appellants. He assumed, based on his interpretation of GMAC's computerized comment documents, that the notice had been sent; however, he admitted they were in a format that was unfamiliar to him. The trial court denied Appellants' motion for involuntary dismissal as well as their post-judgment motion for rehearing. The trial court also entered judgment in favor of Wells Fargo.

While it should be clear to all, it apparently bears repeating that the party seeking to foreclose a mortgage must have standing at the time the complaint is filed. *See Rodriguez v. Wells Fargo Bank, N.A.*, 178 So. 3d 62, 63 (Fla. 4th DCA 2015). Where the plaintiff relies on an undated indorsement to establish its standing, it must prove that the indorsement was made prior to the filing of the complaint and that the indorsed note was in the plaintiff's possession at the time the suit was filed. *See McLean v. JP Morgan Chase Bank Nat'l Ass'n*, 79 So. 3d 170, 174 (Fla. 4th DCA 2012). Commonly, plaintiffs prove this fact by attaching a copy of the note bearing the undated indorsement to the complaint. *See Ortiz v. PNC Bank, Nat'l Ass'n*, 188 So. 3d 923, 925 (Fla. 4th DCA 2016). However, in this case, the copy of the note Wells Fargo attached to its complaint lacked the indorsement found on the original note admitted into evidence; therefore, the copy does not prove standing at the time suit was filed. *See Friedle v. Bank of N.Y. Mellon*, 226 So. 3d 976, 978-79 (Fla. 4th DCA 2017). Another way to prove when an indorsement was placed on a note is through testimony, but Wells Fargo's witness admitted he had no knowledge of when that indorsement was made. Furthermore, on cross-examination, Mr.

4

Handville testified that the documents he reviewed showed that, from 2007 until April 2014, GMAC, Wells Fargo, and their lawyers could not locate the original note. Five years after the underlying suit was filed, Deutsche Bank presented the note to Ocwen, with no explanation offered for where the "original" note had been or when and how the blank indorsement was added.

Wells Fargo also tried to establish standing by offering a copy of an unsigned PSA that supposedly included Appellants' loan. It is difficult to understand how this unexecuted document, even if properly authenticated, could establish standing or that Appellants' loan was included in the relevant trust. Wells Fargo failed to prove that this document was admissible under the business records exception because it was not created or originally maintained by Wells Fargo or Ocwen, but instead was a copy of a printout obtained from the SEC's website. *See id.* at 978. Thus, Wells Fargo's reliance on *Deutsche Bank National Trust Co. v. Marciano*, 190 So. 3d 166 (Fla. 5th DCA 2016), and *Bolous v. U.S. Bank National Ass'n*, 201 So. 3d 691 (Fla. 4th DCA 2016), is misplaced. The plaintiffs in those cases properly proved that the relevant PSAs specifically included the loans in question, which had been transferred to the respective plaintiffs prior to filing suit, and the PSAs were either properly admitted as business records or the borrower failed to object to their admittance. Here, Wells Fargo's lack of standing mandates reversal.

Furthermore, Wells Fargo did not carry its burden of proving compliance with the notice of default provisions contained in paragraph 22 of the mortgage. *See Martins v. PNC Bank, Nat'l Ass'n*, 170 So. 3d 932, 936 (Fla. 5th DCA 2015). There was no copy of a demand letter admitted into evidence; at best, there was a copy of text maintained by

5

GMAC that the third-party vendor should have included in a default letter. Proof that the default letter was drafted or mentioned in the company's notes is not sufficient. *See Allen v. Wilmington Tr., N.A.*, 216 So. 3d 685, 687-88 (Fla. 2d DCA 2017). "Instead, mailing must be proven by producing additional evidence such as proof of regular business practices, an affidavit swearing that the letter was mailed, or a return receipt." *Id.* at 688. Mr. Handville was unable to testify that the default notification letter had been drafted, much less that it had been mailed first class or was actually received by Appellants. His testimony did not prove compliance with paragraph 22 of the mortgage, as he had no documentation from the third-party vendor that a default letter had been prepared or sent by any means to Appellants, and he had no knowledge about the vendor's business practices. *See Edmonds v. U.S. Bank Nat'l Ass'n*, 215 So. 3d 628, 630 (Fla. 2d DCA 2017). Failure to comply with this condition precedent is an additional, independent ground mandating reversal of the judgment. *See Figueroa v. Fed. Nat'l Mortg. Ass'n*, 180 So. 3d 1110, 1117 (Fla. 5th DCA 2015).

Accordingly, we reverse the judgment entered in favor of Wells Fargo and remand the case to the trial court with instructions to enter an order of involuntary dismissal. By a separate order, we grant Appellants' motion for appellate attorney's fees.

REVERSED AND REMANDED WITH INSTRUCTIONS.

ORFINGER and WALLIS, JJ., concur.